# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00449-COA

**ELLIOT JACKSON AND NICOLE JACKSON**         **APPELLANTS**

**v.**

**UNIVERSITY OF MISSISSIPPI MEDICAL**         **APPELLEE**
**CENTER**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/2014 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SHANE F. LANGSTON |
| | JOHN BRECKENRIDGE HUNT IV |
| | JOHN G. CLARK |
| ATTORNEYS FOR APPELLEE: | WHITMAN B. JOHNSON III |
| | LORRAINE WALTERS BOYKIN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | BENCH TRIAL VERDICT IN FAVOR OF |
| | APPELLEE |
| DISPOSITION: | AFFIRMED: 02/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     Elliot Jackson was injured when he fell following a dental procedure at the University of Mississippi Medical Center (UMMC). According to Jackson, the staff negligently ignored his repeated complaints of light-headedness prior to the fall. Conversely, the dentist and his assistant testified that Jackson collapsed suddenly without warning. After a bench trial, held pursuant to the Tort Claims Act,[1] the trial judge found the dentist and assistant to be more

---

[1] Miss. Code Ann. § 11-46-13 (Rev. 2012).

credible and found no negligence on the part of UMMC. Jackson appeals,[2] and as we find substantial evidence supports the verdict, we affirm.

## STANDARD OF REVIEW

¶2.     An appellate court affords a circuit court judge sitting without a jury the same deference as a chancellor. *City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000). That is, after reviewing the entire record, we will affirm if the judge's findings of fact are supported by substantial credible evidence and are not manifestly wrong or clearly erroneous. *Id.* Questions of law are reviewed de novo. *Id.*

## DISCUSSION

### 1. Sufficiency of the Evidence

¶3.     Jackson was a patient at the UMMC School of Dentistry, having several teeth extracted. He was attended by Dr. Paul Trotter, a resident; Dee Graham, a dental assistant; and Dr. Tracey Dellinger, who was supervising Dr. Trotter during his residency. During the procedure, Jackson received local anaesthetic only, though he had taken narcotics earlier in the day to help with anxiety. After the procedure was completed, Jackson, Trotter, and Graham walked from the operating room to the front desk, where Jackson collapsed and hit his head on the floor. He was unconscious for approximately forty-five seconds and was disoriented when he awoke. Jackson was taken to the emergency room, where he was treated

---

[2] Jackson's wife also asserted a claim for loss of consortium, and she appeals as well; but we will refer to them collectively as "Jackson" for convenience.

for a subdural hematoma (bleeding inside the dura, a membrane between the brain and the skull), which can cause serious brain injury. Jackson spent several days in the ICU, and claimed that the fall left him with lingering psychological problems.

¶4. The principal factual dispute at trial was whether Jackson's collapse was unexpected. According to Jackson, he repeatedly told Graham and Dr. Trotter that he was feeling light-headed and unsteady. He testified that he told Dr. Trotter twice that he was about to pass out immediately before he did, and his theory of the case was that Trotter and Graham negligently allowed him to fall after these warnings. But Trotter and Graham both testified that Jackson never complained of light-headedness. The trial judge, charged with evaluating the credibility of witnesses, found Graham to be the most reliable and consistent witness. Her account was that Jackson fell suddenly and without warning.

¶5. On appeal, Jackson essentially asks this Court to reweigh the credibility of the various witnesses. That we cannot do. The credibility of witnesses is a question exclusively entrusted to the finder of fact at trial – in this case, the trial judge. *See, e.g., Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006). The trial judge, "by his presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Rogers v. Morin*, 791 So. 2d 815, 826 (¶39) (Miss. 2001). We note also that Jackson barely challenges Graham's account, focusing instead on various inconsistencies in the retellings by Drs. Trotter and Dellinger. And, as the trial judge noted, to accept Jackson's

testimony he would not only have to reject the testimony of the UMMC dentistry staff, but also the written notes of Jackson's attending physicians following the injury (that he did not remember anything after the dental procedure) and the records of numerous attending physicians at the Veterans Administration (in which Jackson had attributed various maladies he claimed to have suffered from the fall to war injuries).

¶6.     After reviewing the record, we cannot say the verdict is against the overwhelming weight of the evidence.

### 2. Discovery Sanction

¶7.     Approximately three months before trial, UMMC disclosed that an "Event Report" had been generated, but that it would not be voluntarily produced because it was privileged as having been prepared for peer review.  UMMC's counsel claimed that they were unaware of the report prior to disclosing its existence, but that it contained no meaningful information that had not already been disclosed.  Jackson moved to compel production of the report, and the trial court agreed that it was not privileged.  The day before trial, Jackson  moved for a default judgment or adverse inference based on what he alleged was a discovery violation by UMMC in failing to produce the report in a timely fashion.

¶8.     Jackson makes a rather unconvincing argument alleging bad faith on the part of UMMC.  He focuses on UMMC's counsel initially stating that they did not know who had prepared the report or when.  According to Jackson, this was obvious from the face of the report.  While we agree that the report seems to indicate that it was submitted the day of the

4

fall, the author is less clear; in the body it indicates that the "Reporter" is Dr. Dellinger, but it also states at the top that it was "Submitted by: FLR," which creates ambiguity as to who actually prepared the report. In fact, Jackson's attorney cited the ambiguity of the author in arguing that Jackson was prejudiced by the delay in producing the document, though we note that Jackson never requested a continuance.

¶9.     Jackson also points out what he argues are certain inconsistencies in the report from the subsequent accounts of the witnesses: the report states that prior to the fall, Jackson was "sitting" in the "hallway," though it is not clear whether this is supposed to be what he was doing *immediately* before the fall; the report indicates first and foremost that Jackson was "ambulating" before he fell. It is not even clear what the "hallway" in question is supposed to be.[3] The report also contains, in a blank for medicines that "may" have contributed to the fall, the narcotics Jackson had taken and the local anaesthetics administered during the procedure. UMMC's ultimate position was that the local anaesthetics did not contribute to the fall. Jackson takes further issue with the report's characterization of his injury as "minor" and the statement in the report that Jackson walked "with assistance" prior to the fall, which he claims is not consistent with the testimony that he was escorted but not physically assisted. We see little if any significance to these alleged inconsistencies, and little prejudice in the late revelation.

---

[3] The ward where the dental procedures were performed apparently was a subdivided space that had formerly been a wide hallway, with the operating areas in cubicles and a narrow lane reserved for use as a walkway.

¶10. The trial court denied the motions, emphasizing the time between the granting of the motion to compel discovery of the report and the trial date.

¶11. "The decision to impose sanctions for discovery abuse is vested in the trial court's discretion." *Pierce v. Heritage Props.*, 688 So. 2d 1385, 1388 (Miss. 1997). "The provisions for imposing sanctions are designed to give the court great latitude," but " the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Id.*

¶12. On appeal, Jackson argues that the court applied an improper legal standard because it did not articulate an analysis employing the four factors articulated in *Pierce*, 688 So. 2d at 1389:

> (1) Whether the discovery violations were the result of willfulness or bad faith;
>
> (2) Whether the deterrent value of [Mississippi Rule of Civil Procedure] 37 may be achieved by lesser sanctions;
>
> (3) Whether the wronged party has suffered prejudice as a result of the discovery violation; and
>
> (4) Whether the discovery abuse is attributable solely to trial counsel instead of a blameless client.

¶13. While this is the correct legal standard, we are unaware of any authority requiring the trial court to expressly articulate the standard it is employing when ruling on discovery matters, and Jackson has presented none. The record gives no reason to believe the trial court employed the wrong legal standard; the judge expressed concern with the timing of the motion for dismissal and the amount of time that had transpired since it had been produced,

6

and he noted that the document and the circumstances surrounding its production could be employed in cross-examination and closing argument. The judge's comments were consistent with the relevant legal standard (i.e., prejudice and lesser sanctions) even if he never specifically cited it. Moreover, the judge's point is well taken: despite having the document for almost two months prior to trial, Jackson did not request further discovery or a continuance, nor did he ask for any sanctions short of a default judgment or adverse inference, with that motion being made on the eve of trial. Given our standard of review, we can find no abuse of discretion in the trial court's denial of the motion.

¶14.    **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., NOT PARTICIPATING.**